961 P.2d 641

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Scott R. DuVALT, Defendant–Appellant.**

**No. 23229.**

Supreme Court of Idaho,
Boise, February 1998 Term.

June 24, 1998.

**552**

Gilman J. Gardner, Idaho Falls, for appellant.

Alan G. Lance, Attorney General; Kimberly A. Coster, Deputy Attorney General, Boise, for respondent.

SILAK, Justice

This case involves an appeal from a ruling of the district court refusing to grant the appellant's motion to suppress. We affirm.

## I.

### FACTS AND PROCEDURAL BACKGROUND

Scott R. DuValt (DuValt) was a passenger in a vehicle that was stopped by police for traffic violations and a nonfunctioning tail-light. The police had initially encountered the vehicle while conducting surveillance on a house that was being visited by the occupants of the vehicle. Three people, the driver and two passengers, were in the vehicle. Following the stop, all three occupants of the vehicle were removed from the car by the police and handcuffed. One of police officers at the scene asked DuValt his identity. DuValt repeatedly gave false names, a false date of birth, and a false social security number.

While the officers were attempting to discern DuValt's true identity, DuValt asked one of the officers to retrieve for him a cigarette out of a pack of cigarettes located in DuValt's shirt pocket. In attempting to return the pack of cigarettes to DuValt's pocket, the officer was unable to do so because of an object in the pocket. The officer then reached into DuValt's pocket and removed a vial of what was later determined to contain methamphetamine. DuValt was immediately placed under arrest, searched and transported to the police station. During the search, a razor blade and a plastic bag containing marijuana and more methamphetamine were discovered on DuValt's person.

At the police station, DuValt's true identity was finally determined when he was identified by a probation and parole officer who knew DuValt was wanted for absconding from supervision on an unrelated matter. DuValt was charged with possession of methamphetamine under Idaho Code § 37–2732(c)(1). The State elected not to pursue charges related to the contents of the plastic bag.

DuValt filed a motion to suppress the controlled substance contained in the vial. The district court denied the motion to suppress, finding that the handcuffing of DuValt was a reasonable means to execute the investigatory stop, and the search of DuValt's pocket did not implicate the Fourth Amendment since DuValt voluntarily asked the police officer to retrieve the cigarettes. DuValt appeals the denial of the motion, asserting that the district court should have suppressed the evidence of the vial and the substance contained in it as fruits of an illegal search and seizure under the Fourth Amendment to the United States Constitution.

## II.

### STANDARD OF REVIEW

When reviewing an order granting or denying a motion to suppress, this Court

defers to the findings of fact of the trial court unless they are clearly erroneous. *State v. Medley*, 127 Idaho 182, 185, 898 P.2d 1093, 1096 (1995). This Court exercises free review over whether constitutional requirements have been satisfied in light of the facts found. *Id.* Additionally, any implicit findings of the trial court supported by substantial evidence should be given due deference. *State v. Kirkwood*, 111 Idaho 623, 625, 726 P.2d 735, 737 (1986).

## III.

## ANALYSIS

### A. The District Court Did Not Err In Finding That There Was Reasonable Suspicion To Initiate The Investigatory Stop.

 It is well established in Idaho that when a police officer observes conduct which leads to the reasonable conclusion that "criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous," the officer is entitled to conduct a limited stop of the suspect. *State v. Johns*, 112 Idaho 873, 876–77, 736 P.2d 1327, 1330–31 (1987) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The legality of the stop will be judged under a "totality of the circumstances" test. *Id.* The officer must have a reasonable articulable suspicion that criminal activity is occurring. *State v. Gallegos*, 120 Idaho 894, 897, 821 P.2d 949, 952 (1991). This is a less demanding standard than the probable cause standard. *Id.* at 896, 821 P.2d at 951. "[T]he proper inquiry is to look at the totality of the circumstances and ask whether the facts available to the officers at the time of the stop gave rise to a reasonable suspicion, not probable cause to believe, that criminal activity may be afoot." *Id.* at 897, 821 P.2d at 952.

 It is undisputed that the vehicle which DuValt occupied stopped at a house which was under surveillance by the police officers for suspected drug activities. It is also undisputed that the occupants of the vehicle visited with the residents of the house. After leaving this house, the driver of the vehicle committed several traffic viola-

tions, including failing to stop at a stop sign, making an unlawful u-turn, driving without taillights and exceeding the residential speed limit. These facts, taken as a whole, together with the reasonable inferences from those facts justified a limited stop. The police officers had been surveying a house suspected of drug activity; therefore, it can be inferred that occupants of the vehicle were involved with the criminal activity. · Additionally, the traffic violations were unlawful activities and in themselves justified the limited stop. *See* I.C. § 49–1403 (stating that it is unlawful to operate a car on the public roads contrary to law.) The decision of the district court that the investigatory stop was a proper *Terry* stop is affirmed.

### B. The Use Of The Handcuffs On DuValt Was A Reasonable Means To Execute The Investigatory Stop.

 Preliminarily, we note that the State argues that this issue may not be raised on appeal because it was not raised to the trial court. This Court has held that ordinarily issues cannot be raised for the first time on appeal. *Sandpoint Convalescent Servs. Inc. v. Idaho Dep't of Health & Welfare*, 114 Idaho 281, 284, 756 P.2d 398, 401 (1988). An exception to this rule, however, has been applied by this Court when the issue was argued to or decided by the trial court. *Northcutt v. Sun Valley Co.*, 117 Idaho 351, 356–57, 787 P.2d 1159, 1164–65 (1990). In the case at bar, the trial court stated that "[d]efendant contends that he was illegally arrested when he was handcuffed and patted down. . . . The handcuffing during this investigatory stop was a reasonable means to execute the investigatory stop." Since this issue was directly addressed by the trial court below, we will decide this issue on appeal.

 The rationale for allowing a limited investigatory stop includes enhancing the safety of the police officer who is conducting the stop. *Johns*, 112 Idaho at 877, 736 P.2d at 1331. Therefore, the officer is warranted to conduct a search of a suspect to discover weapons. *Id.*

"The officer need not be absolutely certain that the individual is armed; ... in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicions or 'hunch,' but to specific reasonable inferences which he is entitled to draw from the facts in light of his experience."

*Id.* at 877–78, 736 P.2d at 1331–32 (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868.)

Therefore, based upon the specific facts of the situation and the reasonable inferences drawn from those facts, officers are entitled to use handcuffs in limited investigatory stops to maintain their safety. *Id.* If the use of the handcuffs is a reasonable precaution to ensure the officers' safety, the use of the handcuffs is warranted during the limited stop. If the investigative detention becomes unreasonable, the detention is transformed into an arrest. *State v. Pannell,* 127 Idaho 420, 423, 901 P.2d 1321, 1324 (1995). In determining if the detention becomes unreasonable, the court is to consider: (1) the duration of the invasion imposed by the additional restriction; and (2) the law enforcement purposes served. *Id.* (quoting *United States v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)).

In *Pannell,* this Court held that the handcuffing of a defendant turned an investigatory stop into an arrest. *Pannell,* 127 Idaho at 424, 901 P.2d at 1325. In *Pannell,* one defendant was investigated by three police officers. The police officers were aware of the identity of the defendant and aware that he had been involved in a domestic dispute. The defendant was questioned on a suspected domestic violence dispute and was at all times cooperative with the officers, stepping out of the vehicle, admitting he had been in a domestic violence dispute, performing field sobriety tests and consenting to the search of his vehicle. *Id.* at 425, 901 P.2d at 1326. The totality of the circumstances of this case is distinguishable from that in *Pannell.*

The stop in this case involved occupants of a vehicle suspected of drug activity. The United States Supreme Court has recently recognized the dangers to police officers involved in routine traffic stops, especially when there is more than one occupant of the vehicle. *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 885, 137 L.Ed.2d 41 (1997) (evidence of drug possession found in vehicle after stop). The United States Supreme Court in that case recognized that the possibility of a violent encounter stems from the fact that evidence of a more serious crime may be uncovered. *Id.* 117 S.Ct. at 886.

When the vehicle in which DuValt was a passenger was stopped, it was late at night, the vehicle contained three occupants and the vehicle was suspected of being involved in drug activity. Once stopped, all of the occupants of the vehicle were handcuffed. Although there were five police officers at the scene, the three occupants of the vehicle were far from cooperative with the officers. The erratic driving of the car was suspected as the driver's attempt to lose the officer's vehicle that followed the subject vehicle. The officers were unaware exactly what activities the occupants of the vehicle had been involved and were unaware the number of occupants in the vehicle. Additionally, DuValt refused to reveal his true identity to the officers. These facts justified the officers' belief that the occupants of the car could pose a danger to the officers' safety. Therefore, the use of the handcuffs was reasonable under the facts of the case as it was a valid means to protect the safety of the officers.

Additionally, the handcuffing of DuValt did not unreasonably extend the duration of the stop. The reason DuValt was detained for any extra length of time was due to his own actions. It is undisputed that DuValt gave a false name several times. Also, DuValt gave a false social security number and a false date of birth. DuValt's detention was extended because DuValt failed to identify himself truthfully.

Based upon the facts presented in this case, the officers were justified in handcuffing DuValt to ensure their safety. The use of the handcuffs did not transform the investigative detention into an arrest. The use of the handcuffs was a valid means to execute an investigatory stop.

## C. The Discovery Of The Vial In Du-Valt's Pocket And The Seizure Of The Vial Did Not Violate The Fourth Amendment Of The United States Constitution.

■ Because we have ruled that the use of the handcuffs in this case was constitutionally permissible under the Fourth Amendment, the discovery of the vial containing methamphetamine was not the "fruit of the poisonous tree." Additionally, DuValt argues that the discovery of the vial was due to police conduct that went beyond the scope of DuValt's request for a cigarette.

The district court correctly concluded that the exchange between DuValt and the officer concerning DuValt's desire to have a cigarette was an entirely voluntary encounter, initiated by DuValt. DuValt voluntarily asked the officer to retrieve a cigarette from a pack of cigarettes located in DuValt's pocket. The need to replace the cigarettes back into the pocket was a reasonable extension of the request absent a different request on the part of DuValt. The officer was merely complying with DuValt's request. As the district court correctly ruled, "[t]he officer was where he was asked to be and the discovery of the vial of methamphetamine was a direct result of [DuValt's] voluntary request and was not the result of any illegal police activity that would implicate the Fourth Amendment to the United States Constitution." We agree and thus affirm the district court's order denying the motion to suppress. *See United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (stating that defendant's acquiescence to accompany drug agents to their office was voluntary and therefore there was no unlawful search); *State v. Knapp*, 120 Idaho 343, 346, 815 P.2d 1083, 1086 (Ct.App.1991) (noting *Mendenhall* as the landmark case dealing with consensual encounters).

## IV.

### CONCLUSION

The stop of the vehicle was a valid investigatory stop. The use of the handcuffs was warranted under the circumstances presented in this case, and therefore, did not consti-

tute an arrest but was instead a valid extension of the investigatory stop. Discovery of the vial and its seizure were the result of DuValt's voluntary request for the officer to retrieve a cigarette from DuValt's pocket. Thus, the officer's search of the pocket and the seizure of the vial did not implicate the Fourth Amendment of the United States Constitution. The order of the district court denying the motion to suppress is affirmed.

TROUT, C.J., and SCHROEDER and WALTERS, JJ., concur.

JOHNSON, Justice, dissents.

I respectfully dissent from part III(B) (The Use of the Handcuffs on DuValt Was a Reasonable Means to Execute the Investigatory Stop) and part III(C) (The Discovery of the Vial in DuValt's Pocket and the Seizure of the Vial Did Not violate the Fourth Amendment of the United States Constitution) of the Court's opinion.

In my view, using the totality of the circumstances test employed in *State v. Johns*, 112 Idaho 873, 736 P.2d 1327 (1987) and *State v. Pannell*, 127 Idaho 420, 901 P.2d 1321 (1995), leads me to the conclusion that the handcuffing did constitute an arrest. In the present case there was no evidence of (1) prior or threatened violence, (2) the presence of weapons, (3) suspects outnumbering officers, or (4) investigation prior to handcuffing. In my view, *Johns* and *Pannell* require that the Court overturn the trial court's determination that the handcuffing was a reasonable means to execute the investigatory stop. As I read *Johns* and *Pannell*, we do not apply a substantial and competent evidence standard to this finding, but review the correctness of the finding based on the totality of the circumstances.