IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 50679

| | |
|---|---|
| In the Matter of: Jane Doe II, A Child Under Eighteen (18) Years of Age. | ) ) |
| JANE DOE I and JOHN DOE I, | ) ) |
| Petitioners-Respondents, | ) Filed: August 31, 2023 ) ) Melanie Gagnepain, Clerk |
| v. | ) ) THIS IS AN UNPUBLISHED |
| JANE DOE (2023-14), | ) OPINION AND SHALL NOT ) BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) |

Appeal from the Magistrate Division of the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Courtnie R. Tucker, Magistrate.

Judgment terminating Doe's parental rights, <u>affirmed</u>.

Aaron Bazzoli, Canyon County Public Defender; Alex W. Brockman, Deputy Public Defender, Caldwell, for appellant.

Thomas Humphrey; Boise, for respondents.

_____

HUSKEY, Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights. Doe alleges the magistrate court erred in finding a statutory basis for terminating her parental rights and that termination is in the best interests of the child. Because substantial and competent evidence supports the magistrate court's findings, the judgment terminating Doe's parental rights is affirmed.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the biological mother of Jane Doe II (Jane). In May 2016, Jane and her half-sister[1] were removed from Doe's care based on allegations of physical abuse. Jane was placed with Jane

---

[1] The half-sister was ultimately placed with her biological father, and her removal is not at issue in this appeal.

Doe I and John Doe I (Guardians). Jane was returned to Doe's custody in November 2016. Approximately six months later, Jane was returned to the care of the Idaho Department of Health and Welfare (Department) and Doe called Guardians to see if they would again be foster parents for Jane; Guardians agreed. From October 2017 until January 2018, Jane was moved to a temporary foster home but returned to Guardians' care in January 2018 where she has remained. Guardians encouraged and allowed Doe to visit Jane, but Jane's behavior would become dysregulated after the visits.

In May 2019, a permanency hearing was held. The Department recommended termination of Doe's parental rights and adoption. Instead, the magistrate court ordered a permanent guardianship with Guardians. Guardians wanted to continue to facilitate visitation between Doe and Jane, so with the help of Jane's counselor, Guardians drafted a visitation agreement (agreement) for Doe that created tiers of communication between Doe and Jane. The tiered structure was designed to protect Jane from Doe's erratic and often inappropriate communication. The agreement included Guardians' mailing address and contact information for Jane's counselor. Once each tier was completed, Doe would move to the next tier of communication. The tiers began with letters, then phone calls, then video phone calls, and then in-person visitation. Each tier required weekly contact and lasted one month. For example, if Doe provided weekly letters to Jane for one month, then the next month, Doe could have telephone contact with Jane. The agreement contained provisions limiting the kind of topics that Doe could discuss with Jane and provided parameters for Doe's behavior. Although Doe initially refused to sign the agreement, she eventually signed it and returned it to Guardians in August of 2019.

When Doe mailed the signed agreement to Guardians, Doe also included a birthday card for Jane. That was the first and last communication Doe had with Jane for the duration of the case. Although Doe asked Guardians if she could send electronic messages to Jane, Guardians declined to permit that contact, reasoning that it would be better for Jane to have a physical document like a letter or card. Although Doe sent approximately two text messages to Guardians regarding Jane, Guardians declined to share those text messages with Jane because Doe had not complied with the signed visitation agreement. Because Doe never completed the first tier of the communication agreement, contact between Doe and Jane essentially ceased in 2019.

As a result of the lack of contact, Guardians filed a petition to terminate Doe's parental rights and adopt Jane. After a hearing, the magistrate court found two different statutory bases to

terminate Doe's parental rights. First, the magistrate court found Doe abandoned Jane. Second, the magistrate court found Doe neglected Jane by failing to provide proper parental care and control. The magistrate court then concluded that terminating Doe's parental rights is in Jane's best interests and terminated Doe's parental rights to Jane. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe alleges the magistrate court erred in terminating her parental rights to the child. Specifically, Doe argues the magistrate court's findings that she abandoned Jane, that she neglected Jane, and that termination of her parental rights is in the best interests of the child are not supported by substantial and competent evidence. In response, Guardians contend the magistrate court did not err.

A parent has a fundamental liberty interest in maintaining a relationship with her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be

met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

**A.  The Magistrate Court Did Not Err by Finding Statutory Grounds Existed for Termination of Doe's Parental Rights**

The magistrate court found two statutory bases for termination of Doe's parental rights to the child. First, the magistrate court found that Doe abandoned Jane because Doe willfully failed to maintain a normal parent-child relationship with Jane. Second, the magistrate court concluded Doe neglected Jane by failing to provide her with proper parental care and control necessary for her well-being. These findings are supported by substantial and competent evidence.

**1.  Abandonment**

One of the five bases for termination is abandonment. I.C. § 16-2005(1)(a). Section 16-2002(5) defines the term "abandoned" as the willful failure to maintain a normal parental relationship, including, but not limited to, reasonable support or regular personal contact. "No hard-and-fast rule controls the question of whether a parent has abandoned his or her child; instead, '[e]ach case must be decided on its own particular facts.'" *In re Adoption of Doe*, 143 Idaho at 191, 141 P.3d at 1060 (quoting *Crum v. Dep't of Health & Welfare*, 111 Idaho 407, 409, 725 P.2d 112, 114 (1986)). A petitioner bears the burden of persuasion to show by clear and convincing evidence that the parent abandoned the child, which "includes a showing that the defendant parent is without just cause for not maintaining a normal relationship." *Id.* at 192, 141 P.3d at 1061. "The

key issue regarding willfulness is whether the parent is capable of maintaining a normal relationship with the child." *Doe v. Doe*, 155 Idaho 505, 508, 314 P.3d 187, 190 (2018).

If the petitioner meets his burden, the parent must present evidence that there is just cause for the failure to maintain the parental relationship. *Id.* at 510, 314 P.3d at 192. "If the trier of fact finds that there are no valid defenses or 'just causes,' then the petitioning party has met the burden of persuasion." *Id.* "In making this determination a court should consider evidence of the logistical and financial difficulties associated with maintaining the parental relationship." *In re Doe (2013-30)*, 156 Idaho 532, 537, 328 P.3d 512, 517 (2014).

On appeal, Doe argues that the magistrate court erred in finding that she did not take affirmative steps to maintain the relationship between herself and Jane and that the lack of Doe's efforts was willful. Doe argues that she periodically wrote emails to Jane, periodically sent gift cards to Jane, and was not permitted to have contact because she did not follow the strict requirements of the agreement. She also argues that she should not be faulted because she did not have the financial means and sophistication to request visitation from Guardians.

Although Doe testified that she periodically sent emails to Guardians to share with Jane and periodically sent gift cards, the magistrate court did not find these statements credible. Instead, the magistrate court credited the testimony of Guardians that Doe sent approximately two text messages to Guardians each year and never sent anything to Jane other than the initial birthday card. Doe testified that although she knew Guardians' address, when she sent several letters to Jane, those letters were returned as "undeliverable." Doe made no effort to resend the letters. This Court will not substitute its view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Flowers*, 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct. App. 1998).

Moreover, on appeal, Doe makes no argument that her failure to maintain contact with Jane was not willful. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). Consequently, she has waived any challenge to the magistrate court's finding that she abandoned Jane. Nonetheless, even when reviewed on the merits, Doe's claim fails.

The magistrate court concluded that Doe was capable of maintaining a relationship with Jane by complying with the agreement but chose not to, and the failure to have regular personal

contact with Jane for more than one year was prima facie evidence of abandonment. At the hearing, it was uncontroverted that Doe did not have any contact with Jane after May 2019. Doe did not send any cards, letters, or gifts to Jane with the exception of the birthday card sent in August 2019. Doe sent approximately two text messages a year to Guardians' telephone. Doe knew what was required of her to have contact with Jane and how to contact Jane; Doe had signed and returned the agreement with the terms to the Guardians. Despite this, Doe made no other contact with Jane.

The magistrate court also found that the agreement, drafted with the input of Jane's counselor, was appropriate for Jane's well-being given her removal from Doe's home on two different occasions and Doe's history of "instability, inconsistent visitation with [Jane], inappropriate parenting practices and inability to reunify with [Jane] in the context of a child protection case." The magistrate court found that although the agreement was restrictive in the beginning stages, it was not impossible for Doe to comply; instead, by Doe's own admission, she was simply unwilling to abide by its terms. The magistrate court found Doe's failure to maintain a normal parent-child relationship to be willful and, as a result, Doe abandoned Jane. Those findings are unchallenged by Doe on appeal but, regardless, are independently supported by substantial and competent evidence.

## 2. Neglect by Failing to Provide Proper Care and Control

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical, or other care or control necessary for her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. The magistrate court found that Doe neglected the child by failing to provide proper parental care and control necessary for her well-being because of Doe's conduct or omission. This finding is supported by substantial and competent evidence.

On appeal, Doe does not challenge the magistrate court's factual findings that Doe did not provide proper parental care and control. Thus, it is undisputed that Doe has not been in a parental role for Jane for approximately six years. Doe provided no shelter, food, medical or educational care, gifts, or financial support. Instead, Doe argues that because Jane was provided care and support by Guardians, Jane was not "without" proper care and control and, thus, there is not substantial evidence to establish the statutory definition of neglect on this ground. Doe

acknowledges that *Thompson v. Thompson*, 110 Idaho 93, 714 P.2d 62 (Ct. App. 1986) contradicts her position but invites this Court to overrule the holding. We decline to do so. As we made clear in *Thompson*: "a parent is not relieved of his or her responsibility to provide appropriate parental care by informally relinquishing custody of a child to a relative or friend." *Id.* at 97, 714 P.2d 66. The fact that Guardians have provided parental care does not relieve Doe of her responsibility to do so.

Alternatively, Doe argues that the holding of *Thompson* should not apply to this case because *Thompson* is distinguishable in that the parent in *Thompson* was in and out of the children's lives and was so dysregulated and anti-social that it supported the magistrate court's findings. Doe argues that this case is unlike *Thompson* because "there is evidence that [Doe] is stable in Nevada, and is capable of providing proper parental care." First, the record does not support Doe's statement that she is stable and currently capable of providing proper parental care. Second, whether Doe is currently capable of providing proper parental care does not negate the finding that she has failed to do so for approximately six years while Guardians provided care to Jane. Guardians were Jane's foster parents following the two occasions that Jane was removed from Doe's care by the Department. After the magistrate court ordered a permanent guardianship, Doe left all parenting responsibility of Jane to Guardians. Doe made no effort to comply with the agreement so she could have contact with Jane, and Doe provided no support, financial or otherwise, for Jane since 2019. Doe has had no contact with Jane since 2019. Thus, substantial and competent evidence supports the magistrate court's finding that Doe neglected Jane by failing to provide proper parental care and control.

## B.     Best Interests of the Child

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare*

*v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012). Here, the magistrate court found that termination is in the best interests of the child because the child had improved significantly while in foster care and termination would provide the child with needed stability and permanency. The magistrate court did not err.

Doe argues on appeal that termination is not in the best interests of the child because regardless of whether Doe's rights are terminated, Jane will still be properly parented by Guardians. Doe argues, "As the child would lose any connection she had with her prior life, and is not in a demonstrably better position as a result of the termination, the facts do not support a finding that the best-interest of the child would be furthered by the termination of parental rights."

The magistrate court found that Jane has not resided with Doe for six years, does not have a meaningful relationship with Doe, Doe was unstable for the majority of the last six years, and "everything about [Doe's] living environment is completely foreign to Jane, including school, peer relationships, community and support system." The magistrate court also found that Doe has demonstrated over the years that she is unwilling to make necessary changes to be an appropriate parent to Jane and cannot prioritize Jane's needs and well-being over her own self-interest. In contrast, the magistrate court found that everything Jane knows is her life with Guardians, in which she is stable. Although Jane was emotionally dysregulated based on her early trauma when she came into Guardians' care, and thereafter when she had visitation with Doe, that emotional dysregulation has ended, and Jane is happy and healthy. The magistrate court concluded that it is in Jane's best interests to terminate Doe's parental rights so that Jane can be adopted by Guardians and have a "permanent, stable, and loving home with caregivers who are dedicated to meeting her needs and promoting her well-being." These findings are supported by substantial and competent evidence. Consequently, the magistrate court did not err in concluding it is in Jane's best interests to terminate Doe's parental rights.

## IV.

## CONCLUSION

The magistrate court's findings that statutory grounds exist to support termination of Doe's parental rights to the child and that termination is in the best interests of the child are supported by

substantial and competent evidence. Accordingly, the magistrate court did not err and the judgment terminating Doe's parental rights to the child is affirmed.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.